BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

ANDREW WEISSMANN (NYBN 2005924)
Chief, Fraud Section
Criminal Division, U.S. Department of Justice

ADAM A. REEVES (NYBN 2363877)
Assistant United States Attorney

AISLING O'SHEA (NYBN 4282257)
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    adam.reeves@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-15-0366 CRB |
| Plaintiff, | THE UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: December 16, 2015 |
| VINCENTE EDUARDO GARCIA, | Time: 10:00 a.m. |
| Defendant. | Court: Hon. Charles R. Breyer |

## INTRODUCTION

The United States respectfully submits this Sentencing Memorandum pursuant to Federal Rules of Criminal Procedure 32 and Criminal Local Rule 32-5(b). From 2009-2013, the defendant, Vincente Garcia, was a Vice President of Global and Strategic Accounts at SAP International, Inc. ("SAP"), focused on sales in Latin America. During that period, the defendant conspired with others to bribe

The United States' Sentencing Memorandum, *United States v. Garcia*, Case No. CR 15-0366 CRB

government officials in Panama in order to win a $14.5 million contract from the Panamanian government, which included the sale of approximately $2.1 million in SAP software. As part of this sophisticated scheme, the defendant arranged for a sham consulting agreement, through which $1.5 million in bribes were to be paid directly and indirectly to senior Panamanian officials. The defendant also personally received approximately $85,965 as a kickback from the proceeds paid by the government of Panama for the software. November 30, 2015 Presentence Investigation Report ("PSR") at ¶¶ 18 and 20.

The November 2015 United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") advise sentencing the defendant to a 60 month term of imprisonment, which is the statutory maximum for the offense of conviction. *See,* U.S.S.G. § 5G1.1(a). Consistent with 18 U.S.C. 3553(a), the United States respectfully requests that the Court impose a term of imprisonment sufficient, but not greater than necessary, to reflect the seriousness of the crime, afford adequate general deterrence, and otherwise comply with the enumerated factors. Because the defendant has already agreed to pay disgorgement of at least $85,965 in the parallel enforcement action brought by the United States Securities and Exchange Commission ("SEC"), the United States does not seek asset forfeiture in this criminal case. *See,* August 12, 2015 Plea Agreement at ¶ 14.

## SUMMARY OF THE OFFENSE CONDUCT

The defendant, Vincente Garcia, worked in the technology industry. In 2008, after working for another global technology company in a high-level sales executive role, he joined SAP International, Inc., in Miami, Florida, where he focused on sales in Latin America. SAP International, Inc. was a subsidiary of SAP A.G., the global information-technology company. SAP is a major tech provider with offices in Palo Alto, California, in the Northern District of California. At SAP International, the defendant was Vice President of Global and Strategic Accounts, responsible for SAP's sales to its most important clients in the region.

Beginning in early 2009, the defendant's superiors at SAP expressed an interest in expanding SAP's presence in Central America, including Panama. In mid-2009, he was contacted by a Panamanian technology lobbyist with a consulting firm ("Consultant A") about the Panamanian

government's desire to upgrade its technology platforms across various government agencies. The defendant had known Consultant A for several years. In September 2009, Consultant A arranged for him to meet in Panama with a high-level Panamanian government official ("Official A") who had substantial influence over the award of technology-related contracts by the Panamanian government. At the meeting, he discussed how SAP's products were relevant to Panama's desired technical upgrades.

In November 2009, the defendant flew from Miami to Panama to meet with Consultant A, Official A, and a second high-level Panamanian government official ("Official B"), who had substantial influence over the award of technology-related contracts at the Panamanian government agency where Official B worked. Official B's agency was planning a multi-million dollar tender to upgrade its technology platform (the "Contract"). The defendant believed that if it won the Contract, SAP would be favored to win future technology contracts with the Panamanian government. He eventually estimated that the total spending by the Panamanian government for such contracts could be over $100 million.

In early February 2010, Official A, through Consultant A, asked if the defendant would have SAP arrange a "fictional" business trip for Official A to Mexico. Official A really just wanted to take a recreational trip to Mexico. The defendant agreed to do so and approved an invitation letter for Official A on SAP letterhead for fictitious meetings in Mexico. The defendant provided this favor for Official A, with the intent that it would help SAP win future Panamanian government business, including the Contract.

Later in February 2010, the defendant traveled again from Miami to Panama and met with Consultant A, Official A, a former subordinate of his at SAP, who was planning on leaving SAP ("Advisor"), and another individual ("Partner"), who owned a Mexico-based company ("Channel Partner") that sold SAP products in Mexico. Channel Partner wanted to enter the Panamanian technology market. Also during this trip, the defendant was introduced to a lobbyist ("Agent"), who was a close relative of a high-level Panamanian government official ("Official C"), who had substantial influence over the award of Panamanian government contracts.

Agent told the defendant that Agent could facilitate Channel Partner's and SAP's business with the Panamanian government. Based upon discussions with Agent during this meeting, as well as

The United States' Sentencing Memorandum, *United States v. Garcia*, Case No. CR 15-0366 CRB

3

subsequent discussions with Consultant A, the defendant understood that it would be necessary to pay Agent money for bribes to Panamanian officials in order for SAP or Channel Partner to be awarded any government contracts. As a result, the defendant agreed to help pay Agent so that Agent could do whatever was necessary to help secure the contract for SAP, including paying bribes.

In March 2010, Consultant A – on behalf of the defendant, Partner, Advisor, Consultant A, and Consultant's A's partner ("Consultant B") – reached an agreement with Official A and Agent to pay bribes for the upcoming tender on the Contract. Specifically, the agreement provided that Official A would receive 2% of the Contract and Agent 10%. The defendant understood at this time that Official B might need to be paid as well. Agent was paid by Channel Partner through a consulting contract for fake services. A few months later, the defendant received from Consultant B a draft of that sham contract, which obligated Channel Partner to pay Agent 10% of the value of any contracts between Channel Partner and the Panamanian government.

It was later determined that Channel Partner would bid directly on the Contract, reselling SAP products. The defendant agreed with Consultant A, Partner, and others that the defendant would persuade his colleagues at SAP to approve substantial discounts on SAP products resold by Channel Partner for the Contract. The discounts by SAP assisted Channel Partner in making the illegal payments to Official A and Agent. The defendant also agreed with Consultant A, Advisor, and Partner that they would personally pay the defendant approximately 1% of the Contract as a kickback for his corrupt efforts. Because he knew it was wrong, the defendant did not disclose this side agreement to SAP. As negotiations on the Contract continued later in 2010, the defendant agreed with Official A that he should receive a $150,000 bribe for the Contract. Advisor also agreed at this time to pay Official B a bribe for the Contract.

In January 2011, Channel Partner was awarded the Contract for $14.5 million. Of that amount, in 2011 and 2012, SAP received approximately $2.1 million in total from Channel Partner for the SAP software licenses it resold under the Contract. The money paid to SAP by Channel Partner was positively factored into the defendant's 2011 and 2012 job performance at SAP.

The Contract was implemented over the course of approximately three years. The Defendant

The United States' Sentencing Memorandum, *United States v. Garcia*, Case No. CR 15-0366 CRB

knew that Consultant A, along with Consultant B, would pay Official A approximately $150,000. He understood that Advisor would pay Official B some amount even if he did not know exactly how much. The defendant further knew that Partner agreed to pay Agent 10% of any contracts awarded by the Panamanian government to Channel Partner and that Agent was a close relative of Official C, a very senior Panamanian official. The defendant believed that paying the bribes was necessary to win the Contract, as well as to potentially win additional contracts planned by the Panamanian government. Furthermore, although he did not ultimately receive a full 1% of the Contract, the defendant was paid $85,965 as a kickback, which he received by international wire transfer to bank accounts in the United States. *See generally,* PSR at ¶¶ 5-22.

## GUIDELINE CALCULATIONS

"Under 18 U.S.C. § 3553(a)(4)(A)(ii), district courts are instructed to apply the Sentencing Guidelines issued by the United States Sentencing Commission that are 'in effect on the date the defendant is sentenced,'" except where it would violate the *Ex Post Facto* Clause. *Peugh v. United States*, 133 S. Ct. 2072, 2081 (2013). Using the current, November 2015, Sentencing Guidelines, the United States Probation Office correctly calculated that the total offense level is 31. This sentencing guideline calculation is consistent with the guideline calculation agreed to by the parties in the August 12, 2015 Plea Agreement. If Criminal History Category I is applied, the resulting sentencing range is a term of imprisonment of 108 to 135 months. However, the maximum sentence for the only count of conviction is "not more than five years" or 60 months. *See* 18 U.S.C. §371. Therefore, pursuant to U.S.S.G. § 5G1.1(a), the resulting sentencing guideline range is 60 months.

## THE FACTORS IN 18 U.S.C. § 3553(a) WARRANT A TERM OF IMPRISONMENT

The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012)(*en banc*); 18 U.S.C. § 3553(a)(2).

Here, that goal is best accomplished by imposing a term of imprisonment, the duration of which

should be sufficient, but not greater than necessary, to reflect the seriousness of the crime, afford adequate general deterrence, and otherwise comply with the factors in 18 U.S.C. 3553(a). *See, e.g., United States v. Granados*, Case No. CR 10-20881 JAL (S.D. Fl. September 8, 2011)(former CEO of Florida-based telecommunications company sentenced to 46 months in prison following his plea to one count of conspiracy to violate the FCPA in a $500,000 scheme to bribe officials in Honduras)(government sentencing memorandum and judgment attached as Exhibits A and B); and *United States v. Warwick*, Case No. CR-09-447 HEH (E.D. Va. June 25, 2010)(defendant sentenced to 37 months in prison following his plea to one count of conspiracy to violate the FCPA in a scheme to bribe government officials in Panama for the purpose of securing maritime contracts)(government sentencing memorandum and judgment attached as Exhibits C and D).

    In deciding what sentence is appropriate to impose, the government encourages the Court to consider the following conduct by the defendant. First, when the FBI first contacted him, the defendant agreed to make voluntary statements that reflected a willingness to accept responsibility. In his subsequent meetings with the government, the defendant continued to forthrightly acknowledge his wrongdoing. Second, the defendant worked hard to cooperate with the government. He spent a great deal of time reviewing documents and answering questions that assisted the government in understanding the details of a complex, far-reaching, international crime. To date, the government has not been able to prosecute the other persons who share responsibility for the commission of this crime. That is certainly not the defendant's fault. To the contrary, the defendant has done everything within his power to cooperate with the government's investigation and the government asks the Court to please weigh that fact in the defendant's favor. Finally, the defendant committed this crime after a long career and a law-abiding life. PSR at ¶44. Under the circumstances of this case, the need for specific deterrence or a sentence that protects the public from further crimes by this defendant is, in the judgment of the government, remote. 18 U.S.C. §3553(a)(2)(C).

    While certain considerations may support a variance, the amount of the kickback received by the defendant does not. Respectfully, the government disagrees with the PSR's suggestion that the substantial difference between the amounts of money gained by the defendant personally and the total

loss used for the guideline calculation may warrant a variance. PSR at ¶100. It does not.

For purposes of the guideline calculation, the loss for a bribery-related offense includes the benefit received or to be received in return for the bribe payment. *See,* Sentencing Guidelines, §2C1.1(b)(2). *See also, United States v. Cohen,* 171 F.3d 796, 803 (3d Cir. 1999)("'improper benefit' refers to the net value accruing to the entity on whose behalf the individual paid the bribe."); *United States v. Lianidis,* 599 F.3d 273, 283 (3d Cir. 2010)(rejecting the district court's use of the defendants' salaries as the "benefit received" and holding that "the proper calculation of 'benefit received' under U.S.S.G. § 2C1.1(b)(2) is the net value, minus direct costs, accruing to the entity on whose behalf the defendant paid the bribe."); *United States v. Kinter,* 235 F.3d 192, 197 (4th Cir. 2000)("[W]e join all of the other circuit courts that have considered the issue, which have uniformly held that when a middleman defendant acts on behalf of a third-party payer of the bribe, the district court may consider the payer's bribe-generated benefits when calculating the 'benefit received' under U.S.S.G. § 2C1.1, as long as those profits were reasonably foreseeable or the result of acts aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant."); and *United States v. Montani,* 204 F.3d 761, 770 (7th Cir. 2000)(noting that "the value should be considered as a *whole*, not as individual shares to each co-conspirator").

Here, more than $1.5 million in total bribes were paid to secure a $14.5 million contract, and the benefit SAP received as a result of the bribe scheme was $2.1 million, the price of the software sold to the Panamanian government (PSR at ¶14). Thus, loss, for the purposes of the Sentencing Guidelines, is more than $1.5 million and less than $3.5 million (PSR ¶30). That the defendant enriched himself with the kickback in the course of the bribery scheme is an aggravating factor that is separate from – not a substitute for – the correct calculation of the loss pursuant to U.S.S.G. §2C1.1(b)(2) and §2B1.1(b)(1)(I).

If the Court decides to grant a variance in this case, it should be for the right reasons and the kickback is not one of them.

//
//
//

The United States' Sentencing Memorandum, *United States v. Garcia*, Case No. CR 15-0366 CRB

# CONCLUSION

For the reasons set forth herein, the United States respectfully requests that the Court impose a term of imprisonment sufficient, but not greater than necessary, to reflect the seriousness of the crime, afford adequate general deterrence, and otherwise comply with the factors in 18 U.S.C. 3553(a).

Dated: December 9, 2015					Respectfully submitted,

							BRIAN J. STRETCH
							Acting United States Attorney

							/s/
							_____
							ADAM A. REEVES
							Assistant United States Attorney